Exhibit 1

PUBLIC MATTER—NOT DESIGNATED FOR PUBLICATION

**FILED**

MAR - 3 2021

**STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES**

## STATE BAR COURT OF CALIFORNIA

## REVIEW DEPARTMENT

| | | |
|---|---|---|
| In the Matter of | ) | 16-J-17320 (17-J-00289) |
| | ) | |
| TY ODELL CLEVENGER, | ) | OPINION |
| | ) | |
| State Bar No. 216094. | ) | |
| | ) | |

This reciprocal discipline proceeding is based on Ty Odell Clevenger's professional misconduct in Texas that occurred in 2009 and in the District of Columbia (D.C.) that occurred between 2010 and 2012. In August 2014, he was disciplined by a Texas district court judge for taking a position that unreasonably increased the costs or other burdens in a case or delayed resolution of a matter. In November 2016, the Disciplinary Panel of the United States District Court for the District of Columbia (D.C. Panel) disciplined Clevenger for engaging in conduct that seriously interfered with the administration of justice, involved initiating frivolous actions, and delayed a proceeding.

A hearing judge found Clevenger's professional misconduct in Texas and D.C. constituted disciplinary violations in California and recommended discipline including a one-year actual suspension. Clevenger appeals, arguing the judge misconstrued the Texas and D.C. disciplinary orders and requesting we reverse her findings. He also argues the D.C. proceeding did not afford fundamental constitutional protection. Clevenger asserts that, even if we were to agree with the judge's findings, the recommended discipline is punitive and excessive and asks that we impose a reproval or an actual suspension no greater than six months with no requirement to take an ethics

class or the Multistate Professional Responsibility Exam (MPRE). OCTC does not appeal and requests we affirm the judge's findings.

After independently reviewing the record under rule 9.12 of the California Rules of Court, we affirm the hearing judge's findings that the misconduct found in the Texas and D.C. proceedings warrant reciprocal discipline in California and that Clevenger was afforded fundamental constitutional protection in the D.C. proceedings.[1] After considering the applicable standards, comparable case law, and that Clevenger has had eight years of discipline-free practice since his misconduct, we conclude that six months of actual suspension is appropriate discipline to protect the public, the courts, and the legal profession.

## I. PROCEDURAL BACKGROUND IN STATE BAR COURT

On June 9, 2017, OCTC filed a Notice of Disciplinary Charges (NDC) in case nos. 16-J-17320 and 17-J-00289, charging Clevenger with professional misconduct in a foreign jurisdiction under section 6049.1 of the Business and Professions Code.[2] The hearing judge abated the matter between October 2017 and July 2019, pending Clevenger's unsuccessful collateral challenge against the State Bar's disciplinary proceedings in federal court.[3] After a two-day trial on September 19 and 20, 2019, the judge issued her decision on January 14, 2020. Clevenger filed a motion for reconsideration, which the judge denied on March 16. He filed his request for review on April 23, 2020.

---

[1] Clevenger has not at any point contested the Texas proceedings lacked fundamental constitutional protections.

[2] All further references to sections are to the Business and Professions Code unless otherwise noted.

[3] *Clevenger v. Dressler* (9th Cir. Dec. 19, 2018, No. 17-17136.)

-2-

## II.  TEXAS AND D.C. DISCIPLINARY PROCEEDINGS

Clevenger was admitted to practice in California on December 3, 2001.  He has no prior record of discipline in California.

### A.      The Texas Disciplinary Matter

#### 1.  Factual Background Underlying the Professional Misconduct

On May 18, 2009, Clevenger filed an action on behalf of his clients in the United States District Court for the Western District of Texas in Waco (*Erwin I*).  The lawsuit alleged racketeering and conspiracy claims, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO).[4]  On June 17, one month after filing *Erwin I*, Clevenger initiated a case with similar claims in the United States District Court for the Southern District of Texas in Houston (*Erwin II*).  He did not dispose of *Erwin I* prior to filing *Erwin II*.  Subsequently, the matters were consolidated, and *Erwin II* was transferred to the United States District Court for the Western District of Texas.

#### 2.  Texas State Bar Disciplinary Proceeding

This disciplinary action originated from a complaint against Clevenger submitted to the State Bar of Texas on July 16, 2012.  In an amended disciplinary petition, the State Bar of Texas's Commission for Lawyer Discipline (Texas Commission) charged him with violating Texas Disciplinary Rules of Professional Conduct (Texas Rules), rule 3.02 (Minimizing the Burdens and Delays of Litigation) in the 380th Judicial District Court in Collin County, Texas (Texas District Court).[5]  Specifically, it alleged Clevenger committed professional misconduct when he filed *Erwin II* prior to the disposition of *Erwin I*.  Based on the amended petition,

---

[4] Title 18 United States Code section 1962.

[5] The original petition included allegations of professional misconduct in D.C. (discussed *post*) and also alleged violations of rules 3.01 and 8.04(a)(1) of the Texas Rules.  Rule 3.02 provides a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or unreasonably delays its resolution.

Clevenger and the Texas Commission entered into an Agreed Judgment of Public Reprimand on August 18, 2014, in which the Texas District Court found Clevenger's "acts, omissions, and conduct constitute[d] a violation of [r]ule 3.02" of the Texas Rules and adopted the parties' agreed judgment as the appropriate sanction for his misconduct.

**B.      The District of Columbia Disciplinary Matter**

      **1.  Factual Background Underlying the Professional Misconduct**

This D.C. disciplinary matter arose from Clevenger's representation of the plaintiff, Wade Robertson, in a highly contentious matter, *Wade A. Robertson v. William C. Cartinhour, Jr. (Robertson I)*.[6]  The matter, which was originally filed in 2009 by Robertson proceeding pro se, sought a declaratory judgment in the United States District Court for the District of Columbia (D.C. District Court) relating to a $3.5 million investment Robertson received as Cartinhour's attorney and business partner.  After Cartinhour filed a counterclaim against Robertson, United States District Court Judge Ellen Segal Huvelle entered a preliminary injunction against Robertson, sequestering funds traceable to the $3.5 million.

In May 2010, Clevenger appeared on behalf of Robertson and appealed the preliminary injunction to the United States Court of Appeals for the District of Columbia (D.C. Circuit). Clevenger filed multiple motions in the D.C. Circuit to stay the D.C. District Court proceedings, but they were denied.  In an order filed on September 3, 2010, the D.C. Circuit cautioned Clevenger that "the court looks with extreme disfavor upon unnecessary submissions and will not hesitate to impose sanctions upon their filings."  Despite this warning, Clevenger filed another emergency motion to stay the D.C. District Court proceedings.  On October 19, the D.C. Circuit denied the motion and found Clevenger "did not heed [the court's prior] warning and

---

[6] United States District Court for the District of Columbia case no. 1:09-cv-1642.

instead filed the instant motion for stay, his third in this appeal and his fourth in this litigation." Based on his conduct, the court imposed $6,446.06 in sanctions against him.

On November 9, 2010, with litigation in *Robertson I* still pending, Clevenger filed a RICO action in the United States District Court for the Southern District of New York (*Robertson II*). *Robertson II* was found to be related to *Robertson I*, and thus it was subsequently transferred to Judge Huvelle.

On November 15, 2010, a creditor filed a Chapter 7 bankruptcy petition against "W.A.R. LLP," a business partnership formed by Robertson and Cartinhour.[7]  Clevenger attempted to stay the *Robertson I* matter based on the bankruptcy proceedings but was unsuccessful.[8]

In February 2011, *Robertson I* was tried by a jury, which found Robertson liable on the counterclaim for breach of fiduciary duty as a business partner and for legal malpractice.  The jury awarded $3.5 million in compensatory damages and an additional $3.5 million in punitive damages.  Based on the jury's findings, Robertson's complaint for a declaratory judgment was dismissed with prejudice.[9]

On April 2, 2012, Clevenger was sanctioned $7,249 by D.C. District Court Chief Judge Royce C. Lamberth for filing a frivolous appeal in the bankruptcy matter.  The court concluded the appeal was in "bad faith" and Clevenger had sought to apply the automatic stay provision to *Robertson I* to avoid a verdict in the case.

---

[7] The bankruptcy was filed in the United States Bankruptcy Court for the Western District of Tennessee, case no. 2:2010-ap-00566, which was later ordered transferred to the United States Bankruptcy Court for the District of Columbia (D.C. Bankruptcy Court), case no. 1:2011-ap-10003, over the objections of W.A.R. LLP and Robertson on January 4, 2011.

[8] Clevenger's argument to stay *Robertson I* was his contention that the funds sequestered by Judge Huvelle were part of the partnership's bankruptcy estate.  On May 4, 2012, United States Bankruptcy Court Judge S. Martin Teel, Jr. sanctioned Clevenger $10,000 (later reduced to $5,000) for his filing.

[9] On April 3, 2012, the D.C. Circuit affirmed the jury's $7 million verdict in *Robertson I*, finding that Clevenger presented "no meritorious argument on appeal."

On August 10, 2012, Judge Huvelle issued a Memorandum Opinion in *Robertson II*,[10]
granting Cartinhour's motion for sanctions to pay attorney fees and costs.  The judge found
Clevenger's arguments against sanctions "utterly frivolous," and his actions in *Robertson II*
"egregious," "vexatious," and "wasteful, duplicative, [and] foreclosed as a matter of law."  She
concluded the litigation "was brought for no legitimate purpose but rather for harassment and
delay."  In a subsequent order, Judge Huvelle determined the sanctions against Clevenger to be
$123,802.17.  Clevenger appealed to the D.C. Circuit, and, on January 31, 2013, that court granted
Cartinhour's motion for sanctions based on the appeal, and, on March 27, it awarded an additional
$30,935 in sanctions jointly and severally against Clevenger and Robertson.  In making its January
31 order, the court cautioned that "any further frivolous filings in this case may result in
[Robertson and Clevenger] being enjoined from filing in this case or from filing any civil appeals
or original actions in this court."

On November 25, 2014, Judge Lamberth issued a Memorandum Opinion regarding the
bankruptcy matter, pursuant to an order to show cause as to why Clevenger and Robertson
should not be enjoined from further filing appeals in the bankruptcy case and from filing new
matters in the D.C. District Court.  The judge issued the filing injunction against Robertson
because of "the frivolous or harassing nature of the appellants' actions within these cases" but
the judge did not issue the injunction against Clevenger.

## 2. D.C. Disciplinary Proceedings

On December 3, 2015, the Committee on Grievances of the United States District Court
for the District of Columbia (D.C. Committee) charged Clevenger with violations of District of

---

[10] Judge Huvelle dismissed *Robertson II* on March 16, 2012, after the jury rendered a
verdict in *Robertson I*.

Columbia Rules of Professional Conduct (D.C. Rules), rule 8.4(d) (Misconduct),[11] rule 3 (Meritorious Claims and Contentions),[12] and rule 3.2 (Expediting Litigation).[13]  The D.C. Committee's charging document included a summary of allegations from a complaint submitted by Cartinhour's attorney in the underlying litigation, asserting Clevenger "had embarked on a pattern and practice of abuse which had substantially interfered with the administration of justice."  It further stated, "three judicial officers of [the D.C. District Court], in addition to the D.C. Circuit, have sanctioned [Clevenger] based on egregious conduct that established a concerted pattern and effort to add expense and to harass litigants and to abuse and delay the judicial process."  On January 19, 2016, Clevenger filed an Answer denying the allegations.  He also filed a motion to dismiss based on selective prosecution, a motion to transfer, and a motion to permit discovery; all three motions were denied.

On November 30, 2016, the Disciplinary Panel of the United States District Court for the District of Columbia (D.C. Panel)[14] filed an order for "approval of the terms of settlement" between Clevenger and the D.C. Committee.  The D.C. Panel's order noted several events summarized in Judge Huvelle's March 16, 2012 Memorandum Order: (1) Chief Judge Lamberth's imposition of filing sanctions on April 2, 2012, against Clevenger and Robertson for the

---

[11] Rule 8.4(d) of the D.C. Rules provides it is professional misconduct for a lawyer to "engage in conduct that seriously interferes with the administration of justice."

[12] We note that the charging document and the final order cite to rule 3; however, the language in both documents actually mirrors that of rule 3.1.  Thus, we conclude the citation to rule 3 was a typographical error.  Rule 3.1 of the D.C. Rules provides, in relevant part, that a lawyer "shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . . ."  We will refer to the rule as rule 3.1 for the remainder of the opinion.

[13] Rule 3.2 of the D.C. Rules provides, "(a) . . . a lawyer shall not delay a proceeding when the lawyer knows or when it is obvious that such action would serve solely to harass or maliciously injure another.  (b) A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

[14] The D.C. Panel consisted of D.C. District Court Judges Christopher R. Cooper, Randolph D. Moss, and Amit Mehta.

"groundless nature of the bankruptcy appeal;" (2) the D.C. District Court's finding on April 3 that Clevenger presented "no meritorious argument" in the appeal from the verdict in *Robertson I*; (3) Judge Teel's May 4 order granting sanctions and finding Clevenger "knowingly and in bad faith [advanced] frivolous arguments;" (4) Clevenger's appeal from the dismissal of *Robertson II*; and (5) Judge Lamberth's recitation of Clevenger's misconduct in the July 25 order. The D.C. Panel's order "determined there is both a factual and legal basis for the charges filed by the [D.C. Committee] against Clevenger," and it approved the sanctions reached in the parties' drafted settlement, which included an actual suspension of 120 days, followed by an irrevocable resignation from the bar of the D.C. District Court.

### III.  RECIPROCAL DISCIPLINE IS WARRANTED

The final disciplinary orders from Texas and D.C. are conclusive evidence that Clevenger is culpable of professional misconduct in California, subject to two exceptions. (§ 6049.1, subd. (a); *In the Matter of Freydl* (Review Dept. 2001) 4 Cal. State Bar Ct. Rptr. 349, 358 [under § 6049.1, State Bar Court accepts other court findings of misconduct as conclusive].) To show that discipline is unwarranted, Clevenger must establish (1) as a matter of law, his professional misconduct in Texas and D.C. does not warrant discipline in California, or (2) the disciplinary proceedings in those jurisdictions failed to provide him with fundamental constitutional protections. (§ 6049.1, subd. (b)(2) & (3).) On review, he has failed to prove either.[15]

---

[15] We reject Clevenger's argument that the hearing judge erred by excluding various exhibits he attempted to proffer to support his assertion that the D.C. proceedings were "systemically tainted by fraud." Given the limited scope of this reciprocal discipline proceeding, and a lack of authority cited by Clevenger to support his contention, we find the rulings were proper because a hearing judge "has discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time." (Rules Proc. of State Bar, rule 5.104(F); see also *In the Matter of Farrell* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 490, 499.)

A.     **The Texas and D.C. Disciplinary Orders Warrant Discipline in California**

1. **Texas Discipline Order**

Based on the Texas disciplinary order, the hearing judge determined Clevenger was

subject to discipline in California for a violation of section 6068, subdivision (c).[16]  On review,

Clevenger offers multiple arguments to avoid culpability under section 6049.1, subdivision (a).

We have evaluated those arguments and find all of them unpersuasive.

First, we address Clevenger's argument that, because the Texas disciplinary order does

not specify any "factual findings," the hearing judge improperly relied only on the charges made

by the Texas Commission to establish his culpability.  Clevenger has a basic misunderstanding

of section 6049.1, subdivision (a), as it applies to the disciplinary order.  The order clearly states,

"The Court *finds* that the acts, omissions, and conduct on the part of [Clevenger]" constituted

professional misconduct in violation of [r]ule 3.02 of the [Texas Rules]," which prohibits

attorneys from taking a position that unreasonably burdens or delays the resolution of a matter.

(Italics added.)  We find that rule 3.02 of the Texas Rules is equivalent in scope to section 6068,

subdivision (c), which requires an attorney "to counsel or maintain those actions, proceedings, or

defenses only as appear to him or her legal or just" because both prohibit improper actions that

would otherwise burden the judicial process.  Because section 6049.1, subdivision (a), states, "a

final order . . . determining that a licensee of the State Bar committed professional misconduct in

such other jurisdiction shall be *conclusive evidence* that the licensee is culpable of professional

misconduct in this state" (italics added), we conclude that Clevenger is culpable of violating

section 6068, subdivision (c).  (See *In the Matter of Freydl*, *supra*, 4 Cal. State Bar Ct. Rptr. at

---

[16] Section 6068, subdivision (c), requires an attorney "[t]o counsel or maintain those
actions, proceedings, or defenses only as appear to the attorney legal or just, except the defense
of a person charged with a public offense."

p. 358 ["Section 6049.1, subdivision (a), makes clear that we accept the findings of professional misconduct of a sister state as conclusive"].)[17]

Clevenger also argues the hearing judge inappropriately concluded that his actions in Texas were "frivolous" when she stated later in her decision that OCTC had not proven a pattern of misconduct as an aggravating circumstance. He contends her statement is erroneous because he obtained evidence that his actions in Texas were not frivolous. He also claims the Texas Commission prosecutor "dismissed" any allegations that his acts were frivolous when the commission amended the disciplinary petition. These contentions are not supported by the record. As discussed above, Clevenger entered into the agreed judgment that his "acts, omissions, and conduct" constituted a violation of rule 3.02 of the Texas Rules, which conclusively establishes he is subject to reciprocal discipline under California law. (§ 6049.1, subd. (a).)

Finally, Clevenger argues he cannot be found culpable of professional misconduct in California because Texas follows a preponderance of the evidence standard in its disciplinary matters; thus, the record before this court cannot establish misconduct under California's clear

---

[17] Clevenger cites to *Disciplinary Counsel v. Lapine* (Ohio 2010) 942 N.E.2d 328 as persuasive authority that he is not subject to reciprocal discipline. In that case, the Ohio Supreme Court did not subject the attorney to reciprocal discipline because the attorney voluntarily agreed not to practice before the United States Securities and Exchange Commission (SEC) for five years in response to the SEC's complaint that the attorney engaged in a fraudulent securities scheme. Aside from the fact that Clevenger entered into a settlement agreement with the Texas Commission, this case is clearly inapplicable to Clevenger's situation. In its discussion, inter alia, the Ohio Supreme Court found the attorney "did not admit [to] violating any law or committing any professional misconduct, and the SEC did not make an affirmative finding of misconduct . . . . [The attorney] therefore has not been disciplined by the SEC for professional misconduct ... but rather has voluntarily agreed not to practice before the SEC in order to settle a dispute with that agency. The suspension order thus cannot serve as a basis for imposing reciprocal discipline." (*Id.* at p. 332.) Here, Clevenger entered into the Agreed Judgment of Public Reprimand with the Texas Commission, resulting in discipline for professional misconduct based on the Texas District Court finding a violation of rule 3.02 of the Texas Rules.

and convincing standard.[18]  (Rules Proc. of State Bar, rule 5.103 [culpability must be proved by clear and convincing evidence].)  Contrary to Clevenger's position, the record contains sufficient evidence to independently find culpability under our clear and convincing standard; thus, an argument that a foreign jurisdiction's use of the preponderance of evidence standard does not establish sufficient evidence in a California proceeding lacks merit.  (*In the Matter of Jenkins* (Review Dept. 2000) 4 Cal. State Bar Ct. Rptr. 157, 163).  Clevenger's Texas discipline was based on the agreed judgment, and he willingly accepted a public reprimand as an appropriate sanction for his misconduct to avoid further disciplinary proceedings there.  In our view, the Texas order affirmed Clevenger's admission of culpability in the Texas proceeding and is itself sufficient evidence under the clear and convincing standard.  He is bound by this stipulation in these proceedings.  (E.g., *Inniss v. State Bar* (1978) 20 Cal.3d 552, 555.)  Therefore, we reject Clevenger's argument.

### 2. D.C. Discipline Order

Similarly, the D.C. Panel's order is also conclusive evidence that Clevenger is culpable of professional misconduct in California.  (§ 6049.1, subd. (a).)  In its order, the D.C. Panel "determined . . . a factual and legal basis" existed that Clevenger violated rules 8.4(d), 3.1, and 3.2 of the D.C. Rules.  Since the rule 3-200(A) violation[19] also forms the basis of Clevenger's misconduct under section 6068, subdivision (c), the hearing judge found him culpable, but did not assign additional disciplinary weight.  (See *In the Matter of Lais* (Review Dept. 2000)

---

[18] Clear and convincing evidence leaves no substantial doubt and is sufficiently strong to command the unhesitating assent of every reasonable mind.  (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 552.)

[19] All further references to rules are to the former California Rules of Professional Conduct that were in effect until November 1, 2018, unless otherwise indicated. Rule 3-200(A) provides, in part, that an attorney must not seek, accept, or continue employment if the attorney knows or should know that the employment is "[t]o bring an action, conduct a defense, assert a position in litigation, or take an appeal, without probable cause and for the purpose of harassing or maliciously injuring any person."

4 Cal. State Bar Ct. Rptr. 112, 118 [frivolous appeal violates section 6068, subd. (c), and

violation of rule 3-200(A) is redundant; *In the Matter of Moriarty* (Review Dept. 2017) 5 Cal.

State Bar Ct. Rptr. 511, 520 [no dismissal of charge where same misconduct proves culpability

for another charge, but no additional weight in determining discipline].)  For the reasons below,

we affirm the judge's findings.

       In his briefs on review, Clevenger argues the D.C. discipline order lacks sufficient factual

findings to hold him culpable for reciprocal discipline in California.  For the same reasons we

applied to the Texas agreed judgment, we reject this argument and find the D.C. discipline order

conclusively establishes that Clevenger is subject to discipline in California.  (§ 6049.1,

subd. (a).)  Prior to an evidentiary hearing in the D.C. disciplinary matter, Clevenger entered into

an agreement with the D.C. Commission to resolve the charges against him.  The D.C. Panel

adopted the parties' agreement[20] and "determined that there [was] both a factual and legal basis

for charges filed by [the D.C. Committee] against Mr. Clevenger."  The charges were that

Clevenger violated rules 8.4(d), 3.1, and 3.2 of the D.C. Rules, which we find prohibit the same

misconduct as section 6068, subdivision (c), and rule 3-200(A).  Similar to our comparison

regarding the Texas Rules, we find that the D.C. Rules cited by the D.C. Panel in its order and

section 6068, subdivision (c), and rule 3-200(A) are equivalent in scope.  Therefore, we find that

Clevenger is again subject to reciprocal discipline under section 6049.1, subdivision (a).[21]

_____

    [20] In his opening brief, Clevenger points to his testimony that he and the D.C. Committee prosecutor jointly drafted the disciplinary order to not contain any factual findings or conclusions of law because his "primary concern [was he did not] want to set off a domino of events in other jurisdictions."  Taking his testimony at face value, his or the prosecutor's attempt to circumvent the purpose or application of section 6049.1, subdivision (a), is not relevant to this proceeding, and the D.C. disciplinary order provides sufficient evidence to establish reciprocal discipline in California.

    [21] In addition to the D.C. disciplinary order, the record provides ample evidence that Clevenger was sanctioned five times between 2010 and 2013 for his appeals and attempts to stay proceedings in the underlying matter—once by the bankruptcy court and four times by the district court.  Even after his first sanction by the D.C. Circuit in October 2010, Clevenger continued to

Clevenger also maintains that the discipline order is void because it relies on Judge Huvelle's sanction order, which he asserts is tainted by fraud.[22] We reject Clevenger's challenge as lacking merit and as an attempt to relitigate the D.C. Panel's findings, which are final. (See *In the Matter of Collins* (Review Dept. 2018 5 Cal. State Bar Ct. Rptr. 551, 559–560 [court orders are final for disciplinary purposes once review is waived or exhausted].) As explained above, the order encompasses Clevenger's history of borderline vexatious behavior of repeatedly filing actions, motions, and appeals without a proper basis in multiple D.C. courts, and each time his arguments in other courts were rejected. Even so, he continued to reiterate them before the Hearing Department and now this court on review. Our view of the record does not support a finding of fraud as Clevenger never successfully challenged Judge Huvelle's sanctions order. (See *Maltaman v. State Bar* (1987) 43 Cal.3d 924, 951–952 [technical arguments regarding validity of civil court orders waived if orders became final without appropriate challenge; "[t]here can be no plausible belief in the right to ignore final, unchallengeable orders one personally considers invalid"].) His actions in D.C. constitute misconduct as a violation of section 6068, subdivision (c), in California. (See *Sorensen v. State Bar* (1991) 52 Cal.3d 1036 [attorney's spiteful, vindictive, and expensive re-litigation of matters previously and finally resolved is violation of section 6068, subd. (c)].) His misconduct also establishes a violation of rule 3-200(A) as Clevenger's acts were found to be harassing, delaying, and in bad faith when he filed *Robertson II* after filing *Robertson I*. Since the rule 3-200(A) violation also forms the basis

---

[22] We note the D.C. disciplinary order is not based only on Judge Huvelle's sanction order. file frivolous and repetitive actions, motions, and appeals. In Judge Huvelle's Memorandum Opinion, she states that "[b]y pursuing *Robertson II* after the verdict in *Robertson I*, Clevenger was far more than recklessly indifferent; he acted in bad faith and with utter disregard for the judicial system." These appellate findings are entitled to great weight and are supported by clear and convincing evidence. (*In the Matter of Kinney* (Review Dept. 2014) 5 Cal. State Bar Ct. Rptr. 360, 365 [reliance on court of appeal opinion to which attorney was party as conclusive legal determination of civil matters bearing strong similarity to charged disciplinary conduct]; *In the Matter of Lais, supra,* 4 Cal. State Bar Ct. Rptr. at pp. 117–118 [court adopted frivolous appeal findings by court of appeal where attorney failed to produce any competing evidence].)

of Clevenger's misconduct under section 6068, subdivision (c), like the hearing judge, we do not

assign additional disciplinary weight.

**B.      No Showing that D.C. Proceedings Lacked Constitutional Protection**

Clevenger did not demonstrate the D.C. disciplinary proceedings "lacked fundamental

constitutional protection." (§ 6049.1, subd. (b).)  While he argues the practices and procedures

of the D.C. Commission violated his right to due process, we find the facts demonstrate that the

proceedings provided fundamental constitutional protection.

"The fundamental requirement of due process is the opportunity to be heard 'at a

meaningful time and in a meaningful manner.' [Citations.]" (*Mathews v. Eldridge* (1976)

424 U.S. 319, 333.)  Clevenger specifically asserts the D.C. proceedings fundamentally lacked

constitutional protection because he was not allowed the opportunity to collaterally attack Judge

Huvelle's sanctions order, not afforded the same discovery rights as the D.C. Commission, and

prevented from calling witnesses during an evidentiary hearing.  Clevenger's arguments fail as

the record is clear that the D.C. disciplinary proceedings afforded him due process as he was

given multiple opportunities to be heard on the charges.  As OCTC argues in its brief, under

rules 83.14 and 83.16(d)(3) of the Local Rules of the District of Columbia District Court, the

D.C. Commission has authority as the prosecutorial body to investigate attorney misconduct and

utilize subpoena power during its investigative process, which it did when it filed a petition

alleging Clevenger's misconduct.  After the D.C. Commission alleges misconduct in its charging

documents, the D.C. Panel, comprised of three district court judges, is the adjudicative body that

makes the final determination in an attorney disciplinary case before the court.  After the charges

were filed, Clevenger filed an answer to the allegations.  He also filed motions to dismiss,

transfer, and permit discovery, all of which were denied after a hearing.

Clevenger also presents allegations of fraud in relation to Judge Huvelle's order to the D.C. Panel.[23]  The D.C. Panel's rejection of his allegations does not mean the proceedings lacked fundamental constitutional protections.  Clevenger also had an opportunity to raise challenges at an evidentiary hearing scheduled for November 29.  However, he decided to settle the case by entering into an agreement with the D.C. Commission regarding his misconduct prior to the hearing, and the D.C. Panel adopted the terms of the parties' settlement.  Considering the multiple opportunities to be heard in the D.C. disciplinary proceeding and his voluntary resolution of the matter, Clevenger has failed to demonstrate that the proceedings lacked fundamental constitutional protection.

### IV.  AGGRAVATION AND MITIGATION

Standard 1.5[24] requires OCTC to establish aggravating circumstances by clear and convincing evidence.  Standard 1.6 requires Clevenger to meet the same burden to prove mitigation.

**A.      Aggravation**

**1. Multiple Acts (Std. 1.5(b).)**

The hearing judge found aggravation for multiple acts of misconduct for Clevenger's filing of frivolous actions in Texas and D.C.; however, she did not assign any weight to this circumstance.  Clevenger challenges the judge's finding by simply asserting the record does not support that the filings were frivolous actions.  OCTC argues Clevenger committed multiple acts of misconduct by improperly filing *Erwin II* in Texas and the myriad filings in the D.C. federal courts related to *Robertson I.*  We find the record establishes Clevenger engaged in a total of six

---

[23] Clevenger asserts, in footnotes 3, 5, and 6 of his opening brief, both the prosecutor and the D.C. Panel "judicially admitted" that fraud had occurred in the *Robertson* cases.  Upon our review of the record, we find no such admissions.

[24] Rules of Procedure of the State Bar, title IV, Standards for Attorney Sanctions for Professional Misconduct.  All further references to standards are to this source.

acts of misconduct: five acts that led to the sanctions orders[25] imposed against him in D.C. and

his unjust filing in Texas. We assign moderate weight. (See *In the Matter of Taylor* (Review

Dept. 2012) 5 Cal. State Bar Ct. Rptr. 221, 235.)

### 2. Significant Harm (Std. 1.5(j).)

The hearing judge found substantial aggravation based on Clevenger's frivolous litigation

that caused significant harm to the administration of justice. (Std. 1.5(j) [significant harm to

client, public, or administration of justice is aggravating circumstance].) We agree. Clevenger's

misconduct burdened the federal courts in D.C. through his repeated filing of meritless motions,

appeals, and actions that disrupted the efficient administration of justice and improperly taxed

the court system. The D.C. District Court concluded that his conduct "generated a staggering

amount of work for the court . . . ." This warrants substantial aggravation.[26] (See *In the Matter*

*of Reiss* (Review Dept. 2012) 5 Cal. State Bar Ct. Rptr. 206, 217 [wasted judicial time and

resources considered aggravating].)

### 3. Indifference (Std. 1.5(k).)

The hearing judge found Clevenger's lack of insight into his own misconduct warranted

significant consideration in aggravation. (Std. 1.5(k) [aggravation for indifference toward

rectification or atonement for consequences of misconduct].) On review, Clevenger challenges

the judge's indifference finding by arguing she was "particularly offended by [his] attack on

Judge Huvelle's sanctions order." Regarding his misconduct in D.C., he continues to perceive he

is the victim because he could not present evidence of extrinsic fraud during the D.C.

proceedings as "it had been fraudulently concealed." Clevenger's unwillingness even to

---

[25] Three sanctions orders were issued by the D.C. District Court on October 19, 2010,
April 2, 2012, and August 10, 2012, and the D.C. Circuit issued a sanctions order on January 31,
2013. Also, the D.C. Bankruptcy Court issued a sanctions order on May 4, 2012 (subsequently
modified on September 26, 2012).

[26] We do not find his one act of misconduct in Texas, a separate court system, as causing
significant harm there.

-16-

consider whether his discipline was based on his repeated filing of frivolous and meritless

pleadings, as established by several sanction orders and rulings against him, remains a real

concern. (*In re Morse* (1995) 11 Cal.4th 184, 209 [Supreme Court found attorney "went beyond

tenacity to truculence" when he was unwilling to consider appropriateness of his position].)

Clevenger's failure to accept responsibility for his misconduct in D.C. suggests he may commit

further misconduct in similar situations, yet he fully admitted his 2009 act of misconduct in

Texas was wrong and he has not had any disciplinary issues since his D.C. discipline issued in

2016.  (*In the Matter of Layton* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 366, 380.)  Thus,

on balance, we assign moderate weight to Clevenger's lack of insight.

### 4.  Pattern of Misconduct (Std. 1.5(c).)

The hearing judge concluded Clevenger's misconduct did not rise to the level of a pattern

under standard 1.5(c).  We agree.  OCTC does not challenge this finding on review.  Clevenger

engaged in one act of misconduct in Texas in 2009, and five acts of misconduct in D.C. over the

period of 2010 through 2012, which does not support a finding that his misconduct qualifies as a

pattern.  (See *In the Matter of Kinney*, *supra*, 5 Cal. State Bar Ct. Rptr. at p. 368 [significant

aggravation where repeatedly engaging in vexatious litigation for more than six years rose to

pattern of misconduct].)

### B.    Mitigation

### 1.  No Prior Record of Discipline (Std. 1.6(a).)

Absence of a prior record of discipline over many years, coupled with present misconduct

that is not likely to recur, is a mitigating circumstance.  (*Cooper v. State Bar* (1987) 43 Cal.3d

1016, 1029 [discipline-free record most relevant where misconduct is aberrational and unlikely

to recur].)  The hearing judge determined that Clevenger's slightly greater than seven years of

discipline-free practice only warranted minimal mitigating weight.  Neither party disputes the

judge's determination.  Clevenger's years of discipline-free practice is not a significant period of time.  Further, given his indifference, we cannot view his behavior as unlikely to recur.  We affirm the judge's finding of minimal mitigating weight.  (*In the Matter of Song* (Review Dept. 2013) 5 Cal. State Bar Ct. Rptr. 273, 279 [limited mitigating weight assigned for 12-year record of discipline-free practice where attorney showed lack of insight by offering ill-founded explanations for misconduct].)

### 2.  Good Character (Std. 1.6(f).)

Clevenger is entitled to mitigation if he establishes extraordinary good character by a wide range of references in the legal and general communities who are aware of the full extent of his misconduct.  (Std. 1.6(f).)  The hearing judge noted Clevenger established good character evidence through the telephonic testimony of four witnesses, including two attorneys and two clients, who attested to his integrity and good character.  The judge gave favorable consideration to the attorney witnesses due to their "strong interest in maintaining the honest administration of justice."  (*In the Matter of Brown* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 309, 319.)  However, like the judge, we find that this evidence is entitled to limited mitigating weight.  Though the witnesses spoke of Clevenger as a highly dedicated and competent attorney, their testimony is insufficient to warrant more credit as they do not represent a wide range of the community nor were they aware of the full extent of Clevenger's misconduct, as the standard requires.  (*In the Matter of Kreitenberg* (Review Dept. 2002) 4 Cal. State Bar Ct. Rptr. 469, 476 [character testimony from three attorneys not sufficiently "wide range" of references].)

### 3.  Misconduct Remote in Time and Subsequent Rehabilitation (Std. 1.6(h).)

Clevenger is entitled to mitigation if he can show subsequent rehabilitation where the misconduct is remote in time.  (Std. 1.6(h).)  The hearing judge assigned some mitigation for Clevenger not engaging in frivolous litigation since 2012.  We agree with the judge that the

record supports some mitigation under this standard and note that OCTC does not contest the judge's findings regarding this circumstance. At this point, Clevenger has practiced in Texas for eight years with no evidence of additional misconduct. (See *Amante v. State Bar* (1990) 50 Cal.3d 247, 256 [three years of unblemished post-misconduct practice given some mitigative weight].)

### 4. Excessive Delay in Conducting Disciplinary Proceedings (Std. 1.6(i).)

Excessive delay by the State Bar in conducting disciplinary proceedings and causing prejudice to the attorney is a mitigating circumstance. In order for a delay to constitute a mitigating circumstance, "an attorney must demonstrate that the delay impeded the preparation or presentation of an effective defense. [Citation.]" (*In the Matter of Respondent K* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 335, 361.) The hearing judge found that Clevenger was not entitled to any mitigation for an excessive delay by OCTC in bringing charges against him. Clevenger challenges this finding and argues that OCTC's inaction from 2012—when it learned about the Texas discipline—up until its filing of the NDC in 2017 led him to believe he could settle the D.C. matter without reciprocal discipline in California. OCTC requests we affirm the judge's finding and asserts this evidence does not convincingly establish that he was prejudiced, as required by the standard. Clevenger's sole argument is he would have not settled the D.C. disciplinary case if he had notice of the possibility of reciprocal discipline. We reject his argument because section 6049.1 provides him with constructive notice that his underlying misconduct could subject him to discipline in California. We find Clevenger has not presented sufficient evidence to suggest that OCTC's delay affected his ability to present a proper defense.

## V.  SIX-MONTH ACTUAL SUSPENSION IS APPROPRIATE DISCIPLINE

The purpose of attorney discipline is not to punish the attorney, but to protect the public, the courts, and the legal profession; to preserve public confidence in the profession; and to maintain high professional standards for attorneys.  (Std. 1.1.)  Our disciplinary analysis begins with the standards.  While they are guidelines for discipline and are not mandatory, we give them great weight to promote consistency.  (*In re Silverton* (2005) 36 Cal.4th 81, 91–92.)  The Supreme Court has instructed us to follow the standards "whenever possible."  (*In re Young* (1989) 49 Cal.3d 257, 267, fn. 11.)

In analyzing the applicable standards, we first determine which standard specifies the most severe sanction for the at-issue misconduct.  Here, standards 2.12(d) and 2.9 are applicable.  Standard 2.12(d) states that violations of an attorney's duties under section 6068, subdivision (c), are covered in standard 2.9.  Standard 2.9(a) provides actual suspension is the presumed sanction when an attorney maintains or counsels a frivolous claim or action for an improper purpose or uses means that have no substantial purpose other than to delay or prolong the proceeding or cause needless expense, resulting in significant harm to an individual or the administration of justice.  When the misconduct results in harm, but it is not significant, the appropriate level of discipline is reproval or actual suspension. (Std. 2.9(b).)  Since we find Clevenger's misconduct caused significant harm to the administration of justice, standard 2.9(a) applies.  We reject Clevenger's argument that, if misconduct is found, reproval is appropriate; he has provided no basis for us to go outside standard 2.9(a).  (*Blair v. State Bar* (1989) 49 Cal.3d 762, 776, fn. 5 [deviating from standards requires court to articulate clear reasons for doing so].)

The hearing judge recommended a one-year actual suspension based on her understanding of the facts and application of case law when OCTC was requesting a disbarment recommendation.  Although he presents no case law to support his position, Clevenger urges us

-20-

to impose discipline no greater than a six-month period of suspension.[27]  In its brief, OCTC

argues that the judge's recommendation was appropriate.  However, at oral argument, OCTC

conceded fewer acts of misconduct took place than as set forth in its brief.  It now maintains that,

at a minimum, compliance with California Rule of Court, rule 9.20 is required, which becomes

applicable where 90 days or more of actual suspension is imposed.

  In our review of the case law, we find the closest case to be *In the Matter of Scott*

(Review Dept. 2002) 4 Cal. State Bar Ct. Rptr. 446, where an attorney received 60 days' actual

suspension for pursing a series of frivolous actions in bad faith and for a corrupt motive.  In

*Scott*, the attorney filed four lawsuits that were found to be for an unjust purpose, two of which

were filed against the trial judge and the defense attorney in the first lawsuit.  This court found

Scott's four acts of misconduct constituted not only four counts of culpability under

section 6068, subdivision (c), but also four counts of culpability under sections 6068,

subdivision (g),[28] and 6106.[29]  Scott's misconduct was aggravated by his failure to have gained

any insight into his misconduct and for the significant harm caused by his two lawsuits against

the trial judge in the first lawsuit.  He was afforded mitigation for his lack of prior discipline, that

---

[27] He also argues that our discipline recommendation should not include Ethics School, probation, or the MPRE because he satisfied ethics obligations in 2014 pursuant to his Texas discipline.  We reject this request because the rules and applicable case law require such conditions when a period of actual suspension is imposed.  Rule 5.135(A) of the Rules of Procedure of the State Bar requires an attorney to satisfactorily complete Ethics School unless he or she has completed the course within the prior two years or the Supreme Court orders otherwise.  Also, *Segretti v. State Bar* (1976) 15 Cal.3d 878 holds that, when an attorney's "conduct results in suspension from practice by order of the court," passing the MPRE "will be required, as a condition of resuming or continuing practice, to demonstrate that he knows, understands, and can apply the principles of legal ethics. . . ."  (*Id.* at p. 891.)

[28] Section 6068, subdivision (g), requires that an attorney's duty is "[n]ot to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest."

[29] Section 6106 provides, "The commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an

he had not had further disciplinary issues since then, his community service, and good character, though good character was given reduced weight.

OCTC argues the breadth of Clevenger's misconduct is greater and he should receive more discipline than Scott. We agree, but the difference in our opinion is one of limited degree, such that a recommendation for a one-year actual suspension would be punitive. While Clevenger engaged in six acts of misconduct in two matters resulting in two violations of section 6068, subsection (c), and one violation of rule 3-200(A), Scott's four lawsuits established more violations, including moral turpitude, which is not present in Clevenger's misconduct. We note, however, the D.C. District Court judge in *Robertson II* described Clevenger's conduct as vexatious, among other things. Further, Clevenger's aggravation outweighs his mitigation, while Scott's mitigation outweighed his aggravation, though we recognize that Clevenger has some degree of insight into his misconduct where Scott did not.

Because of the similarity between these cases, and that Clevenger has had eight years of discipline-free practice since his misconduct, we find discipline less than the hearing judge's recommendation is more appropriate and conclude that six months of actual suspension should be recommended in this matter. Any discipline recommendation less than six months is insufficient due to the fact that Clevenger's aggravation outweighs his mitigation. This level of discipline is serious enough to prompt him to reflect on his actions and protects the public, the courts, and the legal profession.

## VI. RECOMMENDATION

It is recommended that Ty Odell Clevenger, State Bar Number 216094, be suspended from the practice of law for two years, that execution of that suspension be stayed, and that he be placed on probation for two years with the following conditions:

---

attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension."

1. **Actual Suspension.** Clevenger must be suspended from the practice of law for the first six months of his probation.

2. **Review Rules of Professional Conduct.** Within 30 days after the effective date of the Supreme Court order imposing discipline in this matter, Clevenger must (1) read the California Rules of Professional Conduct (Rules of Professional Conduct) and Business and Professions Code sections 6067, 6068, and 6103 through 6126, and (2) provide a declaration, under penalty of perjury, attesting to his compliance with this requirement, to the State Bar's Office of Probation in Los Angeles (Office of Probation) with Clevenger's first quarterly report.

3. **Comply with State Bar Act, Rules of Professional Conduct, and Probation Conditions.** Clevenger must comply with the provisions of the State Bar Act, the Rules of Professional Conduct, and all conditions of probation.

4. **Maintain Valid Official State Bar Record Address and Other Required Contact Information.** Within 30 days after the effective date of the Supreme Court order imposing discipline in this matter, Clevenger must make certain that the State Bar Attorney Regulation and Consumer Resources Office (ARCR) has his current office address, email address, and telephone number. If he does not maintain an office, he must provide the mailing address, email address, and telephone number to be used for State Bar purposes. Clevenger must report, in writing, any change in the above information to ARCR, within 10 days after such change, in the manner required by that office.

5. **Meet and Cooperate with Office of Probation.** Within 15 days after the effective date of the Supreme Court order imposing discipline in this matter, Clevenger must schedule a meeting with his assigned probation case specialist to discuss the terms and conditions of his discipline and, within 30 days after the effective date of the court's order, must participate in such meeting. Unless otherwise instructed by the Office of Probation, Clevenger may meet with the probation case specialist in person or by telephone. During the probation period, Clevenger must promptly meet with representatives of the Office of Probation as requested and, subject to the assertion of applicable privileges, must fully, promptly, and truthfully answer any inquiries and provide any other information requested.

6. **State Bar Court Retains Jurisdiction/Appear Before and Cooperate with State Bar Court.** During Clevenger's probation period, the State Bar Court retains jurisdiction over him to address issues concerning compliance with probation conditions. During this period, Clevenger must appear before the State Bar Court as required by the court or by the Office of Probation after written notice mailed to his official State Bar record address, as provided above. Subject to the assertion of applicable privileges, Clevenger must fully, promptly, and truthfully answer any inquiries by the court and must provide any other information the court requests.

7. **Quarterly and Final Reports**

   a. **Deadlines for Reports.** Clevenger must submit written quarterly reports to the Office of Probation no later than each January 10 (covering October 1 through December 31 of the prior year), April 10 (covering January 1 through March 31), July 10 (covering

April 1 through June 30), and October 10 (covering July 1 through September 30) within the period of probation. If the first report would cover less than 30 days, that report must be submitted on the next quarter date and cover the extended deadline. In addition to all quarterly reports, Clevenger must submit a final report no earlier than 10 days before the last day of the probation period and no later than the last day of the probation period.

**b. Contents of Reports.** Clevenger must answer, under penalty of perjury, all inquiries contained in the quarterly report form provided by the Office of Probation, including stating whether he has complied with the State Bar Act and the Rules of Professional Conduct during the applicable quarter or period. All reports must be: (1) submitted on the form provided by the Office of Probation; (2) signed and dated after the completion of the period for which the report is being submitted (except for the final report); (3) filled out completely and signed under penalty of perjury; and (4) submitted to the Office of Probation on or before each report's due date.

**c. Submission of Reports.** All reports must be submitted by: (1) fax or email to the Office of Probation; (2) personal delivery to the Office of Probation; (3) certified mail, return receipt requested, to the Office of Probation (postmarked on or before the due date); or (4) other tracked-service provider, such as Federal Express or United Parcel Service, etc. (physically delivered to such provider on or before the due date).

**d. Proof of Compliance.** Clevenger is directed to maintain proof of compliance with the above requirements for each such report for a minimum of one year after either the period of probation or the period of actual suspension has ended, whichever is longer. Clevenger is required to present such proof upon request by the State Bar, the Office of Probation, or the State Bar Court.

8. **State Bar Ethics School.** Within one year after the effective date of the Supreme Court order imposing discipline in this matter, Clevenger must submit to the Office of Probation satisfactory evidence of completion of the State Bar Ethics School and passage of the test given at the end of that session. This requirement is separate from any Minimum Continuing Legal Education (MCLE) requirement, and he will not receive MCLE credit for attending this session. If he provides satisfactory evidence of completion of the Ethics School after the date of this Opinion but before the effective date of the Supreme Court's order in this matter, Clevenger will nonetheless receive credit for such evidence toward his duty to comply with this condition.

9. **Commencement of Probation/Compliance with Probation Conditions.** The period of probation will commence on the effective date of the Supreme Court order imposing discipline in this matter. At the expiration of the probation period, if Clevenger has complied with all conditions of probation, the period of stayed suspension will be satisfied and that suspension will be terminated.

10. **Proof of Compliance with Rule 9.20 Obligation.** Clevenger is directed to maintain, for a minimum of one year after commencement of probation, proof of compliance with the Supreme Court's order that he comply with the requirements of California Rules of Court, rule 9.20, subdivisions (a) and (c), as recommended below. Such proof must include: the

names and addresses of all individuals and entities to whom Clevenger sent notification pursuant to rule 9.20; a copy of each notification letter sent to each recipient; the original receipt or postal authority tracking document for each notification sent; the originals of all returned receipts and notifications of non-delivery; and a copy of the completed compliance affidavit filed by him with the State Bar Court. He is required to present such proof upon request by the State Bar, the Office of Probation, or the State Bar Court.

## VII.  MULTISTATE PROFESSIONAL RESPONSIBILITY EXAMINATION

It is further recommended that Clevenger be ordered to take and pass the Multistate

Professional Responsibility Examination administered by the National Conference of Bar

Examiners within one year after the effective date of the Supreme Court order imposing

discipline in this matter and to provide satisfactory proof of such passage to the State Bar's

Office of Probation within the same period. Failure to do so may result in suspension. (Cal.

Rules of Court, rule 9.10(b).) If Clevenger provides satisfactory evidence of the taking and

passage of the above examination after the date of this Opinion but before the effective date of

the Supreme Court's order in this matter, he will nonetheless receive credit for such evidence

toward his duty to comply with this requirement.

## VIII.  CALIFORNIA RULES OF COURT, RULE 9.20

It is further recommended that Clevenger be ordered to comply with the requirements of

California Rules of Court, rule 9.20, and to perform the acts specified in subdivisions (a) and (c)

of that rule within 30 and 40 days, respectively, after the effective date of the Supreme Court

order imposing discipline in this matter.[30]  Failure to do so may result in disbarment or

suspension.

---

[30] For purposes of compliance with rule 9.20(a), the operative date for identification of "clients being represented in pending matters" and others to be notified is the filing date of the Supreme Court order, not any later "effective" date of the order. (*Athearn v. State Bar* (1982) 32 Cal.3d 38, 45.)  Further, Clevenger is required to file a rule 9.20(c) affidavit even if he has no clients to notify on the date the Supreme Court filed its order in this proceeding. (*Powers v. State Bar* (1988) 44 Cal.3d 337, 341.)  In addition to being punished as a crime or contempt, an attorney's failure to comply with rule 9.20 is, inter alia, cause for disbarment, suspension,

## IX. MONETARY SANCTIONS

The court does not recommend the imposition of monetary sanctions in this matter, as this matter was submitted for decision prior to March 1, 2021, the effective date of amended rule 5.137(H) of the Rules of Procedure of the State Bar, and all the misconduct in this matter occurred prior to April 1, 2020, the effective date of former rule 5.137 of the Rules of Procedure of the State Bar.  (See *In the Matter of Wu* (Review Dept. 2001) 4 Cal. State Bar Ct. Rptr. 263, 267 [rules of statutory construction apply when interpreting Rules of Procedure of State Bar]; *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208–1209 [absent express retroactivity provision in statute or clear extrinsic sources of intended retroactive application, statute should not be retroactively applied]; *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 841 [where retroactive application of statute is ambiguous, statute should be construed to apply prospectively]; *Fox v. Alexis* (1985) 38 Cal.3d 621, 630-631 [date of offense controls issue of retroactivity].)

## X. COSTS

It is further recommended that costs be awarded to the State Bar in accordance with Business and Professions Code section 6086.10, and are enforceable both as provided in Business and Professions Code section 6140.7 and as a money judgment, and may be collected by the State Bar through any means permitted by law.  Unless the time for payment of discipline costs is extended pursuant to subdivision (c) of section 6086.10, costs assessed against an

---

revocation of any pending disciplinary probation, and denial of an application for reinstatement after disbarment.  (Cal. Rules of Court, rule 9.20(d).)

attorney who is actually suspended or disbarred must be paid as a condition of reinstatement or return to active status.

McGILL, J.

WE CONCUR:

PURCELL, P. J.

HONN, J.

## CERTIFICATE OF ELECTRONIC SERVICE

(Rules Proc. of State Bar, rule 5.27.1.)


I, the undersigned, certify that I am a Court Specialist of the State Bar Court.  I am over the age of eighteen and not a party to the within proceeding.  Pursuant to standard court practice, on March 3, 2021, I transmitted a true copy of the following document(s):


      OPINION FILED MARCH 3, 2021


by electronic service to Ty Odell Clevenger at the following electronic service address as defined in rule 5.4(29) and as provided in rule 5.26.1 of the Rules of Procedure of the State Bar:


      tyclevenger@yahoo.com


by electronic service to Alex J. Hackert at the following electronic service address as defined in rule 5.4(29) and as provided in rule 5.26.1 of the Rules of Procedure of the State Bar:


      Alex.Hackert@calbar.ca.gov


The above document(s) was/were served electronically.  My electronic service address is ctroomA@statebarcourt.ca.gov  and my business address is 845 South Figueroa Street, Los Angeles, CA 90017.

I declare, under penalty of perjury under the laws of the State of California, that the information above is true and correct.



Date: March 3, 2021

Julieta Gonzales
Court Specialist
State Bar Court